Robert H. Tyler, Esq. CA Bar No. 179572
btyler@faith-freedom.com
Mariah Gondeiro, Esq. CA Bar No. 323683
mgondeiro@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 600-2733
Facsimile: (951) 600-4996

Daniel R. Suhr (*Pro Hac Vice to be filed*)
dsuhr@libertyjusticecenter.org
Reilly Stephens (*Pro Hac Vice*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, Illinois 60604
Phone: 312-637-2280
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

MARK MCDONALD AND JEFF BARKE,

    Plaintiffs,

v.

KRISTINA D. LAWSON, *in her official capacity as President of the Medical Board of California*; RANDY W. HAWKINS, *in his official capacity as Vice President of the Medical Board of California*; LAURIE ROSE LUBIANO, *in her official capacity as Secretary of the Medical Board of California*; MICHELLE ANNE BHOLAT, DAVID E. RYU, RYAN BROOKS, JAMES M. HEALZER, ASIF MAHMOOD, NICOLE A. JEONG, RICHARD E. THORP, VELING TSAI, and ESERICK WATKINS, *in their official capacities as members of the Medical Board of California*; and ROBERT BONTA, *in his official capacity at Attorney General of California,*

    Defendants.

Case No. 8:22-cv-01805-FWS-ADS

**PLAINTIFFS' OPPOSITION TO THE MCCRAY MOTION TO INTERVENE**

DATE: Novemeber 17, 2022
TIME: 10:00 A.M.
JUDGE: Hon. Fred W. Slaughter
CTRM: 10D

Plaintiffs Mark McDonald and Jeff Barke oppose the petition to intervene filed by Emanuel McCray. The Motion should be denied because McCray's Motion is procedurally improper, he lacks standing to join as a plaintiff-intervenor seeking different relief, and has failed to identify legally protected interests related to the subject at issue in the case. He also should not be allowed to intervene permissively because he has made no argument to defend his request to do so and because his admission to the case would delay and prejudice the adjudication of Plaintiffs' claims.

**I. Background**

**Plaintiffs Mark McDonald and Jeff Barke**

Plaintiffs Mark McDonald and Jeff Barke filed their Complaint in this case on October 4, 2022. *See* Dkt. 1. They filed their Motion for Preliminary Injunction on October 6, 2022. *See* Dkt. 35. McDonald and Barke are physicians licensed in the state of California. Compl. ¶ 1. They challenge the recently enacted California AB 2098, which makes it "unprofessional conduct" for doctors to advise their patients of any view determined by the Medical Board of California to be misinformation about COVID-19. *Id.* ¶ 2. Their complaint pleads violations of the First Amendment (speech) and Fourteenth Amendment (void for vagueness). *Id.* ¶ 66-86. Plaintiffs seek a declaration that AB 2098 is unconstitutionally viewpoint discriminatory and unconstitutionally vague, and an injunction against enforcement of the law. *Id.* at 13.

**McCray's Motion to Intervene**

On October 19, 2022, Emanuel McCray moved to intervene in this case on behalf of himself and "all other citizens of the United States similarly situated." Motion to Intervene at 2.

While his filing includes extensive bibliographic material, he does not appear to have attached a proposed complaint or other pleading to his Motion.

On October 24, 2022, this Court scheduled McCray's intervention motion to be heard on November 17, 2022, the same day as the Preliminary Injunction hearing. Dkt. 47.

**II. McCray's Motion is procedurally improper because he did not attach a proposed pleading as required by Rule 24(c).**

Fed. R. Civ. P. 24(c) specifies that an intervention motion "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." McCray did not attach any such pleading to his intervention motion. This is not an optional suggestion: any intervenor "must" do this under the rules. McCray's failure to adhere to the requirements of Rule 24 should be enough by itself to deny his motion.

Nor is this requirement an overly-technical formality. By including a proposed pleading, an intervenor demonstrates to both the court and the existing parties what claims he proposes to bring, pursuant to what causes of action. As it stands, Plaintiffs are entirely unclear as to what McCray's legal claims would be. His Motion cites various statutes, treaties, constitutional provisions, and an Oscar-winning film, but at no point as far as Plaintiffs can see do any of these amount to any claim on which relief could plausibly be granted. Plaintiffs (and for that matter, Defendants, and this Court) are entitled to notice of what claims McCray would make if allowed to intervene, and the lack of such notice should doom his motion.

**III. McCray lacks standing, which is required for plaintiff-intervenors who seek relief different than that sought by existing plaintiffs.**

When a plaintiff-intervenor seeks different or broader relief than existing plaintiffs, the intervenor must demonstrate that he would have independent standing to bring suit. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) (holding that plaintiff-intervenors seeking unique relief must meet the standing requirements); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (citing *Town of Chester, N.Y.*, 137 S. Ct. at 1651).

While McCray does not make the relief he seeks explicit, according to his own motion his desired relief is broader than that sought by the Plaintiffs, who he complains are litigating too narrowly. *See* Motion to Intervene at 19. Plaintiffs' focus in this suit is on AB 2098's abridgment of the right to speak and the vagueness of its proscriptions. McCray does not appear focused on either the First or Fourteenth Amendment—rather, his Motion asserts claims based on the Tenth Amendment, the Declaration of Independence, the Treaty of Paris, and the Compromise of 1850. Thus, McCray must establish that he would have standing to bring suit independently before he can intervene in this case.

Standing is not established by a claim of a harm that is "common to all members of the public." *Lujan v. Defenders of Wildlife*, 540 U.S. 555, 575 (1992) (quoting *United States v. Richardson*, 418 U.S. 166, 170 (1974)) (internal quotation marks omitted). A plaintiff must show injury in fact that is fairly traceable to the complained of action, and that is likely to be redressable by the court. *Lujan*, 540 U.S. at 560-61. McCray cannot meet any of these requirements. Therefore, because he would lack standing to bring his own suit, he cannot intervene as a plaintiff intervenor.

*McCray's Alleged Harms*

It is not entirely clear from McCray's Motion to Intervene what injuries he claims to have suffered. When he lays out his protectable interests for the purpose of his intervention analysis, he claims his harmed interests derive from the Declaration of Independence, the Treaty of Paris, the Constitution in general, and the Tenth Amendment in particular, and the Enabling Act signed by the states. Motion to Intervene at 17. He fails to specify any particular interest that is protected by any of these documents, or in what way those interests have been harmed. In the same section of his motion to intervene, McCray claims that California Assembly Bill 2098 would deny the right to a second opinion on medical issues to "all Americans who participate in Federal regular health and 'telehealth' programs." *Id*. Indeed, the only harm explicitly claimed in the Motion to Intervene is the alleged blocking of one of McCray's Facebook posts by the government of China. Motion to Intervene at 12. In what way he intends to attribute this harm to AB 2098 is unclear. Finally, McCray claims that the members of his proposed class "must pay the open and hidden economic and noneconomic costs" of AB 2098. Motion to Intervene at 15. He is not clear as to what those costs are, only that they are somehow mandated by the bill including "the medical treatment for all humans" and the "the denial of informed consent and the right to a 'second opinion.'" *Id*.

Each of these potential claims of harm fall short of the requirements for standing.

*Generalized Grievance*

A generalized grievance is a harm that is "common to all members of the public." *Lujan*, 540 U.S. at 575 (1992) (quoting *Richardson*, 418 U.S. at 170) (internal quotation marks omitted). It is a harm that, "would adversely affect only the generalized interest of all citizens in constitutional governance." *Lujan*, 540 U.S. at 575 (quoting *Schlesinger v.*

*Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974)) (internal quotation marks omitted). Any of the potential harms implicitly claimed by McCray are general in nature and thus cannot establish standing.

First, McCray's potential claims under the various founding documents rely on general rights to free government and local control established by those documents. Unless McCray alleges a specific harm he has suffered in violation of one of the myriad rights protected or exemplified by those documents, his claim will remain general. *Compare Colegrove v. Green,* 328 U.S. 549 (1946) (the constitution's guarantee of a "republican form of government" is not judicially enforceable.)

Second, the "open and hidden economic and noneconomic costs" that will result from the bill's mandate will be paid, according to McCray's Motion to Intervene, by the members of the class he seeks to represent. Motion to Intervene at 15. Given the arguments in the rest of his motion, it seems clear that the class would include the entire American public. These alleged harms therefore amount to no more than generalized grievances.

*Injury in Fact*

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 540 U.S. at 560 (citations omitted). None of the implied harms in McCray's motion to intervene constitute an injury in fact.

First, McCray has not alleged any concrete or imminent injury against any interest protected by the various founding documents he cites. McCray is concerned about international conspiracies against human rights but these harms are not concrete, are not particular to Mr. McCray or his class members, and are neither actual or imminent.

Second, McCray's claim about the denial of the right to second opinions is based on the Code of Medical Ethics Opinion which is not law.[1] Frank A. Riddick, Jr., *The Code of Medical Ethics of the American Medical Ass'n*, Ochsner J. 2003 Spring; 5(2): 6–10. As *Lujan* makes clear, an injury in fact is "an invasion of a *legally protected* interest." *Lujan*, 504 U.S. at 560 (emphasis added). Because the AMA's Code of Medical Ethics is a professional code that does not create legal rights for patients, this claim either is not a legally protected interest and thus cannot constitute an injury in fact, or is a legally protected interest but one for which Mr. McCray has provided no legal basis.

*Fairly Traceable*

McCray's alleged harms are not fairly traceable to the unconstitutional action of the California government. Just as unspecified harms cannot be actual or imminent, neither can they be traced to an illegal action. Take, for instance, McCray's claim that his Facebook post was blocked. To use this harm as a basis for standing, he would need to allege a set of facts tracing that harm back to AB 2098, which he has not done. Indeed, he nowhere explains how his alleged harms are traceable to any of the defendants.

*Redressability*

Finally, unspecified harms clearly cannot be redressed. To establish standing, claimed harms must also be of a kind that a favorable decision by the court is likely to redress them. *Lujan*, 504 U.S. at 561 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38 (1976)). For McCray to have harms redressed, he would need to plead what those harms are or will be. Because of the vagueness of his claims, there is simply no practical way this Court can redress them.

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3399321/.

Because McCray's harms are harms that, if real, affect a large number of members of the public in the same way, and because those harms do not meet the standing requirements, he does not have standing and thus cannot intervene in this case.

**IV. McCray does not satisfy the requirements for Intervention of Right.**

Even if McCray could establish standing, he would not have a right to intervene under the Federal Rules of Civil Procedure or Ninth Circuit precedent. The Federal Rules of Civil Procedure allow for intervention of right and permissive intervention under Rule 24. Fed. R. Civ. P. 24. The Ninth Circuit analyzes interventions as of right under Rule 24(a)(2) by assessing four factors: as enumerated by the court, "(1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the other parties." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (quoting *Smith v. Pangilinan*, 651 F.2d 1320, 1323-24 (9th Cir. 1981)). McCray has not alleged an interest in the property or transaction at issue, his ability to protect any interests he may have would not be harmed by a rejection of his motion to intervene, and to the extent that he seeks to represent the interests of patients in California, Plaintiffs are more adequately situated to represent those interests than he is.

For intervention purposes, an interest must be "protectable under some law," and there must be a "relationship between the legally protected interest and the claims at issue." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), as amended on denial of reh'g (May 30, 1996) (quoting *Forest Conservation Counsel v. U.S. Forest Service*, 66 F.3d

1489, 1493 (9th Cir. 1995)). McCray claims to be intervening in defense of interests protected by various founding documents. Motion to Intervene at 17. He does not point to an interest legally protected by those documents or how they relate to the claims actually made by Plaintiffs in this case. The one interest about which he is specific is the right to a second opinion, for which he cites no law. *See Id.*

McCray also claims that the members of the class he seeks to represent must pay certain "open and hidden economic and noneconomic costs" that will result from AB 2098. Motion to Intervene at 15. He says in the same sentence that the bill mandates three outcomes. *Id.* It is not clear from the language used in the motion whether these outcomes are related interests that he seeks to protect by intervening. Even if they are, he again cites no law establishing that they are legally protectable and provides no basis for concluding that those interests would be related to the claims at issue.

Further, an intervenor generally shows a sufficient relationship between the legally protectable interest and the issue in the case, "only if the resolution of the plaintiff's claims actually will affect the applicant." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003), as amended (May 13, 2003) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) (internal quotation marks omitted)). Even if McCray had specific, legally protectable interests, those interests would not be affected by the outcome of this case. Plaintiffs claim that AB 2098 violates their rights under the First and Fourteenth Amendments. McCray, in his motion to intervene, does not assert any claims derived from those amendments. He remains free to bring his own suit on this issue, and would not be subject to any preclusive effect in the event of a negative outcome for Plaintiffs in this case.

There would be no estoppel, nor even any governing precedent, that would prejudice McCray bringing his own action to redress any injuries he believes he suffered.

Finally, the existing Plaintiffs adequately represent the interests of their patients. McCray expresses concern that AB 2098 will harm the interests of patients. Motion to Intervene at 15. To the extent that the interest impaired is a patient's desire to hear their doctor's best independent judgment about a medical question, Plaintiffs agree. Patients have a legally protected interest to hear their doctor's professional judgment, *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756(1976)("But where a speaker exists. . . the protection afforded is to the communication, to its source and to its recipients both."), and doctors have third-party standing to assert the rights of their patients. *June Med. Servs. L.L.C. v. Ruso*, 140 S. Ct. 2103, 2118-19 (2020)(plurality opinion); *Id*. at 2139 n.4 (Roberts, C.J., concurring in the judgment). Doctors in California whose patients will be directly impacted by AB 2098 are in a better position to represent those interests than is McCray. McCray has identified no interests of patients beyond the right to receive their doctor's best professional judgment and he has given no reason that Plaintiffs' representation of that interest will be inadequate.

## V. McCray has not demonstrated and does not meet the requirements for permissive intervention.

If a party is not entitled to intervene as of right, courts may still allow intervention of a party who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Further, courts must consider whether allowing intervention would, "unduly delay or prejudice the adjudication of the original parties' rights," when making its decision. Fed. R. Civ. P. 24(b)(3). McCray makes no argument

that he meets this standard, only a single conclusory sentence that he satisfies the test. This is not sufficient.

McCray's legal assertions only overlap with those of the plaintiffs in the most general manner. While in both cases AB 2098 comes up, that's the end of the similarities of either fact or law. McCray cites entirely different sources of law for what seem to be entirely different claims, and does so on the basis of facts that are only tangentially comparable to those pled by Drs. McDonald and Barke.

Further, approval of McCray's motion to intervene would unduly delay and prejudice the proceedings for plaintiffs. First, adjudication of McCray's legal claims would potentially increase the duration of the case dramatically given the numerous and varied factual claims that would likely need to be litigated, including depositions regarding the facts that McCray believes to exist, production of documents he suspects are in defendants possession, and witnesses who he feels it is important this Court hear from. This is by comparison to the Plaintiffs claims, which are primarily legal, and Plaintiffs expect this Court will resolve them on summary judgment motions.

Finally, although not dispositive, the opposition of other parties to intervention is a consideration. *Commonwealth Edison Co. v. Allis Chalmer Mfg. Co.*, 207 F. Supp. 252 (N.D. Ill. 1962), aff'd, 315 F.2d 564 (7th Cir. 1963). In this case, the parties oppose intervention, counseling further against the permissive intervention of McCray.

## CONCLUSION

For the above stated reasons, Plaintiffs respectfully request that the Court deny McCray's motion to intervene.

Dated: Novemebr 3, 2022

Respectfully submitted,

/s/ Daniel R. Suhr
Daniel R. Suhr (*Pro Hac Vice to be filed*)
dsuhr@libertyjusticecenter.org
Reilly Stephens *(Pro Hac Vice)*
rstephens@libertyjusticecenter.org
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, Illinois 60604
Phone: 312-637-2280

Robert H. Tyler, Esq. CA Bar No. 179572
btyler@faith-freedom.com
Mariah Gondeiro, Esq. CA Bar No. 323683
mgondeiro@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone: 951) 600-2733
Facsimile: (951) 600-4996

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2022, I electronically filed the forgoing Opposition to Intervention with the Clerk of the Court for the United States Court of District Court for the Central District of California using the CM/ECF system. Defendants in this case have counsel who have appeared and will be served by ECF. Intervenor Emmanuel McCray is proceeding pro se, and is being served by email the evening of November 3, 2022 and will receive physical service by mail at the below address.

Emanuel McCray
2700 Caples Street
P.O. Box 3134
Vancouver, WA 98668

                                             s/ Daniel R. Suhr
                                             November 3, 2022