# Exhibit A

Robert H. Tyler, Esq. CA Bar No. 179572
btyler@faith-freedom.com
Mariah Gondeiro, Esq. CA Bar No. 323683
mgondeiro@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone:     (951) 600-2733
Facsimile:      (951) 600-4996

Daniel R. Suhr (*Pro Hac Vice*)
dsuhr@libertyjusticecenter.org
Reilly Stephens (*Pro Hac Vice*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, Illinois 60604
Phone: 312-637-2280
*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MCDONALD AND JEFF BARKE,<br><br>Plaintiff,<br><br>v.<br><br>KRISTINA D. LAWSON, *in her official capacity as President of the Medical Board of California*; RANDY W. HAWKINS, *in his official capacity as Vice President of the Medical Board of California*; LAURIE ROSE LUBIANO, *in her official capacity as Secretary of the Medical Board of California*; MICHELLE ANNE BHOLAT, DAVID E. RYU, RYAN BROOKS, JAMES M. HEALZER, ASIF MAHMOOD, NICOLE A. JEONG, RICHARD E. THORP, VELING TSAI, and ESERICK WATKINS, *in their official capacities as members of the Medical Board of California*; and ROBERT BONTA, *in his official capacity at Attorney General of California*,<br><br>Defendants. | Case No. 8:22-cv-01805-FWS-ADS<br><br>**DECLARATION OF MARK MCDONALD, M.D.** |

Case No. _____ 1

DECLARATION OF MARK MCDONALD, M.D.

Pursuant to 28 U.S.C. § 1746, Mark McDonald declares as follows:

1. I am over 18 years of age, am a Plaintiff in this lawsuit, and have personal knowledge of the facts described herein.

2. I am a psychiatrist licensed in the State of California and operate a psychiatry practice in the Los Angles area specializing in the treatment of children with mental health problems.

3. I am a graduate of the University of California, Berkley, and the Medical College of Wisconsin.

4. After graduating from medical school in 2007, I completed a residency in adult psychiatry at the University of Cincinnati and a fellowship in adolescent psychiatry at the University of California, Los Angeles.

5. I am board certified in both adult and adolescent psychiatry.

6. I am up to date on all of my continuing medical education requirements.

7. I regularly review journals in my field and consult with colleagues to learn the latest in medical science and research.

8. My practice is focused on adult and adolescent psychiatry. Over the course of the past two years, I have regularly counseled patients dealing with issues stemming from the COVID-19 pandemic and the social response to that pandemic. My clients have sought my counsel on a variety of mental health issues stemming from the pandemic, such as loneliness and social isolation.

9. Because I am a doctor, patients have asked me for my opinion on masking, vaccines, and government and employer policies like shut-downs or work-from-home. I have provided medically accurate information that questions the efficacy of masks, discusses the negative aspects of the vaccines, and disagrees with policies that did tremendous personal and economic harm. When patients ask me, as they often do, as their doctor, for my medical opinion on topics like vaccines, I give them my views based on my understanding of the science and research. Much of the information and opinion I provide in response to those patient questions undermines the government's preferred position as represented by the CDC or State of California.

10. Though my practice is focused on adult and adolescent psychiatry, I am a medical doctor qualified and licensed to provide general care to my patients. When patients see me for psychiatry, but

also have substantial general care needs, my usual practice is to refer them to their family general practice doctor. However, in those instances where a patient presents very common medical issues and I feel confident addressing them based on my experience and knowledge, I do so for the patient's convenience. Fewer than twenty times over the course of the pandemic, a patient sought medical assistance with a case of COVID-19. In those instances, because I have experience and knowledge and because the patient's symptoms were mild, I prescribed or advised ivermectin or hydroxychloroquine to treat the patient. In other instances, where patients are concerned COVID-19, I recommended a course of Vitamin D and other natural supplements to minimize any negative outcomes from the disease.

11.  In those instances where I have prescribed a treatment or given medical advice, I have done so in line with protocols developed by well-respected peers based on scientific research, particularly those of Dr. Peter A. McCullough and Dr. Pierre Kory.

12.  I believe that the care I provided was always consistent with the standard of care. I provided my patients with accurate, up-to-date information based on scientific research. I provided my patients with information necessary to comply with my informed-consent obligations. But I did not hide from my patients information and advice that was contrary to the official received wisdom when I believed that wisdom was incorrect or not best for that individual patient.

13.  I fully intend to continue providing information about masking, treatment, diagnosis, and vaccination that is in line with my best medical advice, formulated based on my reading and experience. Patients are continuing to come to me with requests for medical advice, information, and treatment, for COVID-19, and will do so for the foreseeable future. AB 2098 jeopardizes my medical license because the medical advice I give has been contrary to the government's version of the scientific consensus.

14.  I am also concerned about how to continue practicing under AB 2098 because of the vagueness of the government's standard. The scientific consensus is constantly changing and evolving. It is impossible for me to know with sufficient certainty what of my best medical advice concerning COVID will be deemed contrary to the so-called scientific consensus by the government as I continue to treat patients dealing with COVID questions.

Case No.                                                 3

DECLARATION OF MARK MCDONALD, M.D.

15. Over the course of the COVID-19 pandemic, I became increasingly concerned about the public health response to COVID-19, and feared official public health guidance held the potential to cause harm.

16. These concerns caused me to become outspoken, as both a citizen and a medical professional, about the flaws I see in the public health response to the COVID-19 pandemic.

17. In particular, my expertise in adolescent mental health caused me to be concerned about the potential harm to children that school closures and mandatory mask-wearing policies could have on young people.

18. I objected that isolating children, and requiring them to wear masks, was not justified by the available scientific evidence, particularly since it is widely agreed that otherwise healthy children were at very low risk of either contracting or spreading COVID-19.

19. I likewise objected to the broader use of mandatory masking for the adult population, pointing out the lack of evidence that otherwise-healthy adults would benefit from such face coverings.

20. I have also supported the use of medications such as ivermectin and hydroxychloroquine as options to treat COVID-19, pre-existing drugs long approved as safe and effective by the Food and Drug Administration. I have reviewed many studies on these drugs and find that the evidence supports their use to treat the disease.

21. I have also raised concerns about the new vaccines developed to combat COVID-19, given the lack of evidence that these brand-new drugs had been proven sufficiently safe and effective to be recommended, and in many cases mandated, for essentially the entire American public.

22. I have advocated publicly about these and other objections to federal and state COVID-19 policies, including on social media, in various media interviews, and in my own published writing.

23. My advocacy on these issues has brought me under the scrutiny of the Medical Board of California.

24. In December 2021, I received a letter from the Board informing me of a complaint filed against him by "your patient, N/A." According to the Board, the anonymous complainant alleged my "posts on Twitter/Facebook about masks were flagged for spreading misinformation about Covid and using derogatory terms for disabled people. Alleges [McDonald] spreading misinformation about Covid."

25. I responded by letter that I had never treated a patient named "N/A," and denied that I had offered medical opinions to the public that included inaccurate information.

26. In my prior interactions with the Board, the fact that the complaint was not made by an actual named patient of mine would have ended the matter, as the purpose of such complaints is to protect patients personally subjected to unprofessional conduct. However, the Board did not close the matter, instead responding in January, 2022 with a request for "[a] response to the allegation that you are promoting the use of Ivermectin to cure COVID on Twitter."

27. I again responded to this inquiry by letter, stating that it is my practice to advocate for medical treatments that have the strongest empirical evidence to support their efficacy and safety. My response then linked to a database of studies that supported the use of various medications to treat COVID-19, including ivermectin, vitamin D, zinc, hydroxychloroquine, and aspirin.

28. Rather than closing the matter, the Board appears to be proceeding with an investigation based on the anonymous complaint, with an investigator emailing me on August 30 requesting an interview, which took place in November.

29. Outside of this current investigation by the Board, I have never been disciplined by any medical regulatory authority, had my medical license suspended, or had a complaint against me sustained for unprofessional conduct.

30. I fear the Board's unprecedent pursuit of me based on an anonymous complaint about my social media activity demonstrates the intent of the Board to use the power granted to them by the State of California to punish doctors like me for speech.

31. I believe that AB 2098 intrudes into the privacy of the doctor-patient relationship, replacing the medical judgment of the government for that of licensed professionals like myself, and chilling the speech of those who dissent from the official view.

32. I believe that AB 2098's codification of an official "scientific consensus," is at odds with the progress of science itself, which requires that conventional views be challenged by new theories, and that dissenters air their views for comment and criticism.

Case No.                                     5

DECLARATION OF MARK MCDONALD, M.D.

Doc ID: 39278f1aba7e155dd65560f1b389a67d3afd3759

33. I believe AB 2098 is also at odds with the responsible practice of medicine, which requires that doctors employ individualized professional judgment as to the best course of treatment for each individual patient, rather than following official guidance to the letter in all cases.

34. I believe the goal of AB 2098 is to chill speech—in particular the speech of doctors like me who make a different assessment of the available evidence than the State of California.

35. As a medical professional, I feel it is my professional duty to continue to provide my patients with medically sound advice, but if subject to AB 2098 I will be forced to choose between providing my best medical judgment and censoring that judgment to comply with the law, because of my well-founded fear that the Board will use this new authority to threaten my medical license.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed on December 6, 2022.

*Mark McDonald*
Dr. Mark McDonald, M.D.

Case No. 6
DECLARATION OF MARK MCDONALD, M.D.

Doc ID: 39278f1aba7e155dd65560f1b389a67d3afd3759