ROB BONTA
Attorney General of California
ANYA BINSACCA, State Bar No. 189613
EDWARD KIM, State Bar No. 195729
Supervising Deputy Attorneys General
CHRISTINA SEIN GOOT, State Bar No. 229094
KRISTIN LISKA, State Bar No. 315994
Deputy Attorneys General
 455 Golden Gate Ave.
 San Francisco, CA 94102
 Telephone: (415) 510-3916
 Fax: (415) 703-5480
 E-mail: Christina.Goot@doj.ca.gov
         Kristin.Liska@doj.ca.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK MCDONALD AND JEFF BARKE,**<br><br>Plaintiffs,<br><br>v.<br><br>**KRISTINA D. LAWSON, in her official capacity as President of the Medical Board of California; RANDY W. HAWKINS, in his official capacity as Vice President of the Medical Board of California; LAURIE ROSE LUBIANO, in her official capacity as Secretary of the Medical Board of California; MICHELLE ANNE BHOLAT, DAVID E. RYU, RYAN BROOKS, JAMES M. HEALZER, ASIF MAHMOOD, NICOLE A. JEONG, RICHARD E. THORP, VELING TSAI, and ESERICK WATKINS, in their official capacities as members of the Medical Board of California; and ROB BONTA, in his official capacity as Attorney General of California,**<br><br>Defendants. | 8:22-cv-01805-FWS-ADS<br><br>**DECLARATION OF WILLIAM PRASIFKA IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:        December 16, 2022<br>Time:        10:00 a.m.<br>Courtroom: 10D<br>Judge:       Hon. Fred W. Slaughter<br>Trial Date:  Not scheduled<br>Action Filed: 10/04/2022 |

1

I, William Prasifka, declare:

1. I am the Executive Director of the Medical Board of California (Board), California Department of Consumer Affairs. I have been the Executive Director of the Board since June 15, 2020. In my official capacity as the Executive Director for the Board, I have personal knowledge of the facts stated herein and, if called as a witness I could and would testify competently to those facts.

2. The Medical Practice Act (MPA) created the Board and established a comprehensive program for licensing, regulating, investigating, and, where appropriate, disciplining physicians. The Board is an entity within the California Department of Consumer Affairs. It has the responsibility for enforcing the disciplinary provisions of the MPA. The Board is authorized to take administrative action against all persons guilty of violating the MPA and possesses all the powers granted for that purpose, including investigating information that a physician may be guilty of unprofessional conduct.

3. The mission of the Board is to protect health care consumers through the proper licensing and regulating the practice of physicians and surgeons and certain allied health care professionals, as well as through the objective enforcement of the MPA. The Board also promotes access to quality medical care through its licensing and regulatory functions. Protection of the public is the Board's highest priority in exercising its licensing, regulatory, and disciplinary functions.

4. A primary way the Board protects the public is through the investigation of consumer complaints involving the medical care patients have received from physicians and surgeons. The Board may also investigate physicians and surgeons on its own initiative based upon information it receives from other sources (even anonymous ones).

5. Under either scenario, each case is evaluated to determine whether there has been a potential violation of the MPA. If Board staff determine that the

Board lacks jurisdiction over the alleged violation or that there is insufficient evidence of a violation, they will close the case and take no further action. Alternatively, if Board staff determine that there may evidence of a violation, then an investigation is opened. In quality of care cases, this investigation includes a preliminary evaluation of the case by a medical consultant for the Board who examines the medical record, any additional evidence, and determines whether there is a potential violation of the standard of care.

6. If the medical consultant determines that a potential violation may exist, the case is referred for further investigation, and will be reviewed by a retained outside expert under contract with the Board, who practices in the same field of medicine as the licensee under investigation. That expert will independently evaluate the medical record (without seeing the medical consultant's opinion), and any evidence in the case, and makes an objective evaluation of whether the subject physician violated the standard of care.

7. All investigations and their contents are confidential unless and until formal disciplinary action is taken and disciplinary proceedings are commenced.

8. At each step of review, from the initial intake review, the medical consultant review, and the independent expert review, the complaint against a physician may be closed and rejected if any of the reviewers disagree that sufficient evidence exists to show a violation of the MPA. Investigations are often closed because no violation has been found. For fiscal year 2019-2020, for example, the Board received 10,868 complaints, and opened 1,956 investigations. An even smaller number of investigations, 563, were referred to the Attorney General's Office for consideration of filing disciplinary charges.

9. If a complaint passes through these hurdles and disciplinary proceedings against the physician are filed, the Board has the burden of proof to show by clear and convincing evidence that the physician violated the MPA. For disciplinary actions involving the quality of medical care a physician provided to

patients, the Board has the burden of proof to show by clear and convincing evidence that the physician violated the standard of care.

10. If the Board initiates disciplinary proceedings against a physician, the physician is afforded full due process. The physician is entitled to dispute the charges at an administrative hearing presided over by an Administrative Law Judge. The physician's counsel has an opportunity to cross-examine the Board's expert on the issue of the standard of care and may present a defense expert challenging the Board expert's opinions on the standard of care and presenting alternative testimony as to the proper standard of care.

11. After the hearing, the Administrative Law Judge writes a proposed decision. The proposed decision is then sent to a panel of the Board for consideration. The Board members make the final decision on disciplinary matters and can either adopt, modify, or reject the proposed decision, but they are required to give deference to the Administrative Law Judge's findings as to the respective credibility of conflicting expert testimony as to the standard of care. If the decision finds grounds for discipline, the physician has the right to seek review of the decision in Superior Court by way of administrative mandamus. Thus, investigations are multi-layered and comprehensive, can often take several months or years depending on the particular circumstances of each case, do not always result in the filing of any disciplinary action against a physician, and may not result in discipline even when an action is filed.

12. Existing law currently provides a safe haven to protect physicians who wish to attempt innovative medical treatments from license discipline. The California "Right to Try Act," H&S code section 111548 et seq., affords physicians the ability to attempt non-standard or scientifically accepted treatments in appropriate circumstances and with appropriate protections and regulatory oversight. The purpose of the Right to Try Act is to strike a balance between permitting physicians to attempt novel medical recommendations and treatments,

while still protecting patients and the public from irresponsible or unregulated physician misconduct. The Act specifically states that, notwithstanding any other law, a physician who complies with the requirements of the act, including the notice and informed consent provisions, shall not be subject to license discipline.

13. To date, no physician or surgeon has been disciplined by the Board related to the dissemination of COVID-19 misinformation or disinformation as defined in AB 2098.

14. I understand that the following licensed California physicians are Plaintiffs in this case:

McDonald, Mark, M.D., A 112267; and

Barke, Jeffrey, M.D., G 72290.

15. None of these physicians has a history of discipline against their license with the Board.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of December, 2022, at Sacramento, California.

*William Prasifka* 12/13/2022
WILLIAM PRASIFKA
*Declarant*

LA2022603369
65620883.docx